UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LOREN D. GARY, | ) |
|       Plaintiff, | ) ) ) |
|       v. | ) )  No. 1:24-cv-00008-SEB-DML |
| DENNIS REAGLE, *Warden*, | ) ) ) |
|       Defendant. | ) |

**Order Granting Defendant's Motion for Summary Judgment, Denying Plaintiff's Motion for Summary Judgment, and Directing Entry of Final Judgment**

Plaintiff Loren D. Gary, who is incarcerated in the Indiana Department of Correction, brought this action under 42 U.S.C. § 1983 alleging that Pendleton Correctional Facility Warden Dennis Reagle was deliberately indifferent to his conditions of confinement in violation of the Eighth Amendment. Defendant and Plaintiff have both moved for summary judgment. Because there is no evidence in the record that Mr. Gary was subjected to conditions that posed a substantial risk of objectively serious harm or that Mr. Reagle was deliberately indifferent to the conditions of his confinement, Mr. Reagle's motion, dkt. [38], is **granted** and Mr. Gary's motion, dkt. [55], is **denied**.

**I. Legal Standard**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II.  Discussion

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Gary as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

At all times relevant to the complaint, Mr. Gary was an inmate housed at the Pendleton Correctional Facility ("Pendleton"). Dkt. 38-1 at 5-6. Defendant served as the Warden at Pendleton from approximately July 2020 until February 2024. Dkt. 38-2.

In the beginning of 2021, Defendant, along with other correctional staff and IDOC central office officials, developed a policy to heighten security in G Cell House, where Mr. Gary lived. *Id*. The policy was in response to an increase in security threats at the end of 2020 when G Cell House was averaging 90 assaults per month and experienced numerous fires set by inmates. *Id.* As part of the policy, the amount of allowed property for inmates in G Cell House was limited. *Id*. The new policy allowed inmates to have one set of bedding; one set of clothing including underwear, socks, t-shirt, and jumpsuit; shower shoes; tennis shoes; legal material; personal mail; approved religious material; prescribed medications; a towel and washcloth; and some other personal items including hygiene items and entertainment items such as a tablet, television, and playing cards. *Id*. The new policy limited inmate property because inmates had used excess clothing to hide weapons and the limited amount of property enabled correctional officers to more easily perform searches. *Id*. Beginning in November 2021 inmates in G Cell House were given an extra blanket, and Mr. Gary, during the relevant time period, was allowed to have two blankets and two sheets. *Id.*; dkt. 38-1 at 17.

3

The facility uses a steam heater to provide heat to either individual cells or entire units. Dkt. 38-3. Correctional staff check the temperatures in each unit daily and they are recorded in daily logs. *Id*; *see* dkt 44. The facility logs for October 2023 and January 2024 indicate the temperatures in G Cell House were regularly in the 60s, occasionally dropping into the 50s or rising into the 80s. *See* dkt. 44. Only custody staff had a way to measure the temperature inside the cell house. Dkt. 38-1 at 8.

The physical plant director during the relevant time period was Vincent Stanley, who decided when to close the facility windows and turn on the steam heat. Dkt. 38-3. Mr. Stanley based his decisions on the cell house temperature readings and weather forecasts, and he tried to keep the temperature in each cell house between 65 and 72 degrees. *Id*. G Cell House does not have air conditioning, but it has rooftop fans that can help circulate air. *Id*. Maintenance staff controls the fans based on temperature and ventilation requirements. *Id*. If the cell house temperature drops below 58 degrees, officials would consider it an emergency, and maintenance would be required to fix the heating system within hours. Dkt. 38-2. Recordings indicate temperatures dropped below 60 degrees approximately a dozen times and dropped below 58 degrees on 7 occasions, but never below 50. *See* dkt. 44.

**B.     Analysis**

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation

4

omitted). Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 833-34.

To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *see also Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

To satisfy the objective component, a plaintiff must show "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, . . . 'extreme deprivations are required to make out a conditions-of-confinement claim.' " *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted).

The Seventh Circuit has considered various levels and durations of cold temperatures— and accommodations for those temperatures—in determining whether a constitutional violation exists. *See Haywood v. Hathaway,* 842 F.3d 1026, 1030 (7th Cir. 2016) (Eighth Amendment would have been violated if inmate had been confined for 60 days in a cell with a broken window and temperatures below freezing with blowers blowing and guards refusing to provide blankets or a coat). In *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009), the Seventh Circuit held that

5

allegations of being denied adequate clothing in the winter such that the inmate "suffered from hurt ears and numb hands, felt frostbite, and caught colds" did "not rise to the level of the objectively serious harm necessary to show an Eighth Amendment violation." *Id.* The inmate was provided a winter coat, boots, and hat and "did not show that he was forced to be in the cold for long periods of time or that he suffered anything more than the usual discomforts of winter." *Id.* at 646, 648.

An inmate's allegations that it was so cold in his cell every winter that "ice formed on the walls and remained throughout the winter" created material questions of fact of whether the prison's standard-issued clothing and bedclothing were adequate to combat the cold and whether the defendants knew of the cold and deliberately ignored it. *Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997); *see also Gillis v. Litscher*, 468 F.3d 488, 490 (7th Cir. 2006) (allegations that inmate was forced to sleep naked on concrete floor and had to walk around his cell 14 hours a day to try to stay warm were severe enough to go to trial). These cases indicate that courts must examine multiple factors, including the severity of the cold, its duration, whether the prisoner has alternative means to protect himself from the cold, and whether there are other uncomfortable conditions in addition to the cold, in evaluating the objective component, and that no single factor is dispositive. *Dixon*, 114 F.3d at 644.

In his deposition testimony, Mr. Gary stated, "It would warm up to say maybe fifty, sixty degrees inside of the house. It would last anywhere from days to two or three weeks at a time," but he does not indicate how he knows what the temperature was in his cell. Dkt. 38-1 at 17. Defendant, however, has presented objective evidence in the form of contemporaneous temperature logs showing that temperatures dropped below 60 degrees approximately a dozen times and dropped below 58 degrees on 7 occasions, but never below 50. *See* dkt. 44 at 6, 11, 26, 32, 38, 50, 54, 56,

60, 68-71, and 201-202. Mr. Gary states in his surreply that he learned from a guard that the thermostat measuring the cell block temperature is read by computer and located in the OIC cage near a heating vent and, as a result, "the recorded temps inside the cell house . . . do[ ] not actually reflect the inside temperature for the entire cell house." Dkt. 82-1. Setting aside the possible inadmissibility of the guard's statement as hearsay, Mr. Gary's assertion fails to create a question of material fact for two reasons. First, Mr. Gary's statement is not in the form of an affidavit or other statement under the penalty of perjury in compliance with 28 U.S.C. § 1746 that would allow the court to treat it as evidence in assessing summary judgment motions. *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath (like a notary). Affidavits are admissible in summary judgment proceedings if they are made under penalties of perjury; only unsworn documents purporting to be affidavits may be rejected."); *see Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir.1996) (to the extent that the complaint contains factual assertions that comply with the requirements of Rule 56(e), it can be converted into an affidavit by declaring it to be true under penalty of perjury and signing it). Second, and more importantly, the record is silent on the effect, if any, the thermostat's placement would have on the difference between the actual temperature in Mr. Gary's cell and the temperature as read by the computer. There is no evidence in the record that would support an inference by the trier of fact that the temperature in Mr. Gary's cell differed significantly from the temperatures recorded by the cellblock thermostat. As a result, even if admitted as evidence, Mr. Gary's statements do not create a question of material fact in this matter.

Mr. Gary has not designated evidence from which a reasonable jury could find the objectively serious harm necessary to show an Eighth Amendment violation. "[A] plaintiff may

not rely on mere allegations or denials in his complaint when opposing a properly supported motion for summary judgment." *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020). Indeed, after a defendant meets his burden at the summary judgment stage, the plaintiff must "go beyond the pleadings" to identify "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Here, Mr. Gary has not articulated how facts in the record "show[ ] that there is a genuine issue for trial" on the objective component of his deliberate indifference claim. *See id.* Defendant, on the other hand, has provided concrete evidence regarding the temperatures in Mr. Gary's cellblock during the time in question. The record before the Court is thus readily distinguished from cases where there was evidence presented to support the objective component. *See Henderson v. DeRobertis,* 940 F.2d 1055, 1057-58 (7th Cir. 1991) (record showed, among other things, broken windows, no heat on the cellblock, and temperatures in the cellblock that were below freezing); *Dixon*, 114 F.3d at 642 (record showed, among other things, that for three consecutive winters temperatures in the cellblock were 40 degrees, there was ice on the walls, and requests for extra blankets and space heaters were unfulfilled). But even if the record before the Court supported the objective component, Defendant would still be entitled to summary judgment because Mr. Gary has not designated evidence that could support a finding that Defendant was deliberately indifferent to the conditions created by any problems with the heating system. Defendant stated in his affidavit that when temperatures dip below 58 degrees, it is treated as an emergency and maintenance would immediately fix the heating. Dkt. 38-2 at 2. Mr. Gary testified that he was able to have an additional sheet and blanket in his cell to deal with the cold. Dkt. 38-1 at 17. Mr. Gary has not designated any evidence that would contradict that statement or show that defendant was deliberately indifferent when the temperatures did drop below the 58-degree

threshold.

For the reasons discussed above, therefore, Mr. Reagle's motion for summary judgment, dkt. [38], is **granted**.

### III.  Motion to Add Additional Defendant

After Defendant filed his motion for summary judgment, Mr. Gary filed a motion to add physical plant director Vincent Stanley as a defendant. Dkt. 47. Because there is no question of material fact regarding the objective component of Mr. Gary's Eighth Amendment claim, adding additional defendants would be futile. *See Thomas v. Dart*, 39 F.4th 835, 840 (7th Cir. 2022) (leave to amend complaint may be denied on grounds of futility). Accordingly, Mr. Gary's motions related to adding Mr. Stanley as a defendant are **denied**. Dkts. [47], [48], and [49].

### IV. Plaintiff's Motion for Summary Judgment

On March 3, 2025, Mr. Gary filed his own motion for summary judgment. Dkt. [55]. In his motion, Mr. Gary states that Defendant's evidence regarding the temperature records is inadmissible hearsay and that the placement of the cellblock thermostat makes those recordings unreliable as indicators of the actual temperature in his cell. Dkt. 56 at 7-8, 11.  Mr. Gary's hearsay claims, however, are unfounded. Administrative assistant Katelyn McCorkle provided an affidavit attesting to her personal knowledge of the temperature records, dkt. 79-1, and Mr. Gary has produced no evidence contradicting her personal knowledge or the records' authenticity. *See* Fed. Evidence R. 803(6) (hearsay exception for records of a regularly conducted activity). Furthermore, as discussed above, the placement of the cellblock thermostat fails to demonstrate that Mr. Gary was subjected to unconstitutional conditions because no other facts in the record permits an inference regarding the actual effect, if any, of the thermostat's placement on the reliability of the temperature records. As further discussed above, the undisputed facts in this case show that Mr.

9

Gary was not subjected to conditions that posed a substantial risk of objectively serious harm, and Defendant was not deliberately indifferent to the conditions of Mr. Gary's confinement. Accordingly, Mr. Gary's motion for summary judgment is **denied**. Dkt. [55].

### V. Motion to Stay and Change Venue

On July 9, 2025, Mr. Gary filed a motion to stay this matter and change venue. Dkt. [85]. In his motion, however, he does not indicate why the venue should be changed or what the new venue should be. Accordingly, Mr. Gary's motion must be **denied**.

### Conclusion

For the reasons discussed above, Defendant's motion for summary judgment, dkt. [38], is **granted**, and Plaintiff's motion for summary judgment, dkt. [55] is **denied.**

Plaintiff's motions related to adding Mr. Stanley as a defendant are **denied**. Dkts. [47], [48], and [49]. Plaintiff's emergency motion, dkt. [52], motion for court assistance, dkt. [71], and emergency motion for preliminary injunction, dkt. [72], are **denied as moot**.

Mr. Gary's motion to stay and change venue, dkt. [85], is **denied without prejudice**.

To the extent Mr. Gary wishes to assert Defendant is not in compliance with *French v. Owens*, 538 F.Supp. 910 (S.D. Ind. 1982), he may do so by filing a separate civil action asserting as much. His motion for finding of contempt related to that case is **denied without prejudice**. Dkt. [62].

Judgment consistent with the screening Entry of March 20, 2024, dkt. [10], and this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 8/13/2025

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LOREN D. GARY
251375
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

All electronically registered counsel of record.